IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| DEPARTMENT OF LABOR AND INDUSTRIES,<br><br>Respondent,<br><br>v.<br><br>TRADESMEN INTERNATIONAL, LLC,<br><br>Appellant. | No. 87759-3-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

HAZELRIGG, C.J. — In July 2019, the Board of Industrial Insurance Appeals issued a decision in an appeal from a citation that concluded staffing agency Tradesmen International LLC was not a citable employer under the Washington Industrial Safety and Health Act of 1973[1] for purposes of the citation and vacated it on that basis. Subsequently, the Washington State Supreme Court issued its opinion in a different case involving Tradesmen, *Department of Labor & Industries v. Tradesmen International, LLC*,[2] that held a staffing agency can be a citable employer subject to the act under certain circumstances. The Department of Labor and Industries now relies on that precedent and seeks reversal of the order that vacated the citation against Tradesmen in the case at bar. We agree, reverse, vacate the order, and reinstate the citation.

---

[1] Ch. 49.17 RCW.
[2] 198 Wn.2d 524, 497 P.3d 353 (2021).

FACTS

Tradesmen International leases the services of temporary workers for other companies, most often in the construction industry. Pacific West Construction contracted with Tradesmen to provide workers at its jobsites in 2015. It is undisputed that their "contract provided that Pacific West Construction is solely responsible for directing, supervising, and controlling the Tradesmen . . . employees, as well as their work." The contract also imposed obligations on Pacific West, as the client company, regarding the safety of Tradesmen workers.

In September 2017, Pacific West requested to lease Tradesmen workers for demolition and clean-up services at "the Doan residence," a 1939 Seattle home that had been damaged in a fire. A subsequent inspection by the Department of Labor and Industries (L&I) on October 13, 2017 uncovered the presence of asbestos at the Doan residence. Pacific West had hired a laboratory in March 2017[3] to conduct a good-faith survey of the site for asbestos and subsequently hired a certified asbestos abatement contractor in August 2017 to remove the asbestos identified in that survey from the Doan residence but some asbestos-containing material remained. Pacific West did not provide a copy of the good-faith survey to Tradesmen and the leased Tradesmen workers on the Doan residence site ultimately removed some of the remaining asbestos and asbestos-containing material themselves.

---

[3] The report from the good-faith survey of the Doan residence was not part of the record before the Board of Industrial Insurance Appeals, but neither party disputes the fact or results of the inspection or that L&I had access to the report.

On October 13, 2017, L&I Industrial Hygiene Compliance Supervisor Eva Glosson opened an inspection at the Doan residence. At the later hearing before an industrial appeals judge, Glosson described the course of her inspection. When she arrived at the Doan residence jobsite, two Tradesmen workers were performing demolition and Glosson introduced herself to them. Glosson described her next steps as follows:

> I did a walk around of the worksite. At that point in time I began to document hazards that I saw. And based off of the nature of the complaint being asbestos, my experience with asbestos, understanding that it was a home that appeared to be older, it did not appear to be new construction, that the home had had demolition activities due to a fire[,] that there was a possibility that there were renegade asbestos fibers on the worksite.
> And after speaking to the employees, I noticed certain building materials that, based of [sic] off my experience as a hygienist,[4] I knew were suspect materials. I began to take samples, and then I realized I was having concerns over my own exposures for asbestos fibers at the workplace. I left the worksite and I hung what's called an order of immediate restraint, OIR, an ONIR, an order and notice of immediate restraint—it's the same document—shutting down the worksite until I could find out more information on known asbestos hazards at the worksite.

As part of her inspection, Glosson took photos of the Doan residence and collected samples of materials she suspected contained asbestos. Glosson also requested and received training records and materials from Tradesmen that included the safety checklist Tradesmen field representatives had reviewed with the workers.

---

[4] Glosson explained that she had "been an industrial hygienist since 2006," her education included a "bachelor[']s in geology and environmental science" and a "master[']s in engineering technology with a concentration in occupational safety and health."

On April 12, 2018, L&I issued Tradesmen a citation for two violations: the first under WAC 296-62-07722(1)(c),[5] classified as a serious violation, based on Tradesmen's purported failure to provide workers with required training regarding the hazards created by asbestos, and the second under WAC 296-155-110(3),[6] specifically the subsection that mandates filing an accident-prevention program that addresses asbestos hazards, deemed a general violation, based on noncompliance by Tradesmen. L&I assessed a $7,000 penalty for the serious violation but no monetary penalty for the general violation.

Tradesmen appealed the citation on April 17, and following a preliminary hearing on May 17 and the issuance of a reviewing officer's report, L&I affirmed its initial citation in a corrective notice of redetermination. Significantly, the hearing officer's report indicated:

> The single family home was built in 1939. Had Tradesmen asked Pacific West Construction the right questions prior to sending their employees to the home, they may have prevented their employees' asbestos exposure while performing demolition activities. Additionally[,] the employees may have been able to identify possible asbestos containing materials (ACM) had they been [sic].

---

[5] This provision requires, in "cases where certification requirements of chapter 296-65 WAC do not apply, all employees must be trained according to the provisions of this section regardless of their exposure levels." WAC 296-62-07722(1)(c).

[6] WAC 296-155-110(3) provides:

The following are the minimal program elements for all employers:

A safety orientation program describing the employer's safety program and including:

(a) How, where, and when to report injuries, including instruction as to the location of first-aid facilities.

(b) How to report unsafe conditions and practices.

(c) The use and care of required personal protective equipment.

(d) The proper actions to take in event of emergencies including the routes of exiting from areas during emergencies.

(e) Identification of hazardous gasses, chemicals, or materials involved with the instructions on the safe use and emergency action following an accidental exposure.

(f) A description of the employer's total safety program.

(g) An on-the-job review of the practices necessary to perform the initial job assignments in a safe manner.

On June 20, Tradesmen gave notice of its intent to further appeal. On January 7, 2019, Tradesmen filed a motion for summary judgment before the industrial appeal judge that sought vacatur of the citation in its entirety. L&I filed a response later that month, and the motion was heard on February 14. At the hearing, Tradesmen conceded certain facts with regard to aspects of its relationship with its workers on the Doan residence jobsite. Specifically, counsel for Tradesmen stated,

> [T]here's no dispute that the Tradesmen temporary employees were considered to be W-2 workers, that is, Tradesmen paid the wages directly to the workers, Tradesmen was responsible for the workers' compensation premiums, unemployment premiums, FICA taxes. And so they treated them as if, on paper, as if they were a regular employee.

The industrial appeals judge denied Tradesmen's motion for summary judgment.

The hearing on Tradesmen's appeal commenced on March 19. Two Tradesmen field representatives, Robert Bond and Rodney Holloway, testified about the assignment of the workers and their visits to the jobsite. Bond stated that Pacific West had not informed him that there was asbestos on the site, but he also conceded that he did not specifically inquire because it was not Tradesmen's practice to do so. Bond explained that Tradesmen field representatives and a project coordinator would choose workers to assign to the jobsite based on their skillset and past performance. Bond contacted the workers to offer them the assignment at the Doan residence, met them there, and walked the jobsite together to identify any hazards that might be present. Holloway testified that he and another worker performed substantially similar steps as described by Bond.

Bond and Holloway both stated that they reviewed a safety checklist with the workers as a matter of practice.

The hearing continued on March 21, during which Glosson and Jon Fobes, a project coordinator for Tradesmen, both testified. On July 17, the industrial appeal judge entered their proposed decision and order and concluded that Tradesmen was not a citable employer under WISHA because it did not control the workers or the Doan residence worksite. L&I petitioned for review by the Board of Industrial Insurance Appeals (BIIA), but the request was denied on September 12 and the order became final.[7] On September 24, L&I appealed the BIIA decision to the King County Superior Court, and it was then stayed pending resolution of the Washington State Supreme Court's decision in *Department of Labor & Industries v. Tradesmen International, LLC*, 198 Wn.2d 524, 497 P.3d 353 (2021).

Nearly five years later, in August 2024, L&I moved to reinstate the case and proceed to a bench trial. The superior court granted L&I's motion and, sitting in its appellate capacity, heard argument on January 17, 2025 and later issued a ruling that reversed the BIIA decision and reinstated the April 12, 2018 citation.

Tradesmen timely appealed.

ANALYSIS

I.      Legal Framework for Review

As a preliminary matter, when an administrative appeal comes before this court after the superior court's review of a board determination, we do not review the decision of the superior court. *Lemire v. Dep't of Ecology*, 178 Wn.2d 227,

---

[7] The BIIA also corrected a clerical error in the July 17 order.

232, 309 P.3d 395 (2013).  Instead, we review "the administrative record directly." *Id.*  As such, we consider anew the question presented in L&I's appeal to the superior court of the BIIA determination that resulted in vacatur of the BIIA order and reinstatement of the citation against Tradesmen.  More specifically, the sole issue before us is whether the BIIA erred when it concluded that Tradesmen was not an employer for purposes of a citation based on a violation of WISHA requirements regarding safety training.

L&I contends in its opening brief the BIIA erred as it "focused solely on Tradesmen's control of its employees at the worksite to determine whether Tradesmen was an employer" because "our Supreme Court has held that staffing agencies can be cited under WISHA for failing to adequately prepare employees for their work assignments."  Tradesmen responds that "caselaw does not support [L&I]'s assertion that Tradesmen is an 'employer' for the purposes of WISHA as cited" in the instant case because Tradesmen did not control the workers or the work environment at the Doan residence.  We agree with L&I.

WISHA controls our review of the BIIA decision.  *See* RCW 49.17.150(1).  Again, "[w]e review the [BIIA]'s decision directly, based on the record before the Board."  *Baley Constr. v. Dep't of Lab. & Indus.*, 10 Wn. App. 2d 768, 782, 450 P.3d 647 (2019).  "We review challenged board findings for substantial evidence." *Dep't of Lab. & Indus. v. Phillips 66 Co.*, 18 Wn. App. 2d 57, 64, 489 P.3d 1153 (2021).  "The findings of the board with respect to questions of fact, if supported by substantial evidence on the record considered as a whole, are conclusive." *Erection Co. v. Dep't of Lab. & Indus.*, 160 Wn. App. 194, 202, 248 P.3d 1085

(2011); RCW 49.17.150(1). "'Substantial evidence' is evidence that is sufficient to persuade a fair-minded person of the truth of the stated premise." *McClure & Sons, Inc. v. Dep't of Lab. & Indus.*, 16 Wn. App. 2d 854, 861, 487 P.3d 186 (2021). In addition to substantial evidence, we review the BIIA's findings of fact to determine whether they support its conclusions of law. *Mid Mountain Contractors, Inc. v. Dep't of Lab. & Indus.*, 136 Wn. App. 1, 4, 146 P.3d 1212 (2006). We review the evidence and reasonable inferences therefrom in the light most favorable to the party who prevailed before the BIIA; here, Tradesmen. *Frank Coluccio Constr. Co. v. Dep't of Lab. & Indus.*, 181 Wn. App. 25, 35, 329 P.3d 91 (2014). "Unchallenged findings of fact are verities on appeal." *Hopkins v. Dep't of Lab. & Indus.*, 11 Wn. App. 2d 349, 353, 453 P.3d 755 (2019). We "give great deference to an agency's interpretation of its own properly promulgated regulations, 'absent a compelling indication' that the agency's regulatory interpretation conflicts with legislative intent or is in excess of the agency's authority." *Silverstreak, Inc. v. Dep't of Lab. & Indus.*, 159 Wn.2d 868, 884, 154 P.3d 891 (2007) (plurality opinion) (quoting *Marquis v. City of Spokane*, 130 Wn.2d 97, 111, 922 P.2d 43 (1996)). We review the BIIA's "conclusions of law de novo to determine whether [it] correctly applied the law." *Pro-Active Home Builders, Inc. v. Dep't of Lab. & Indus.*, 7 Wn. App. 2d 10, 16, 465 P.3d 375 (2018).

"WISHA statutes and regulations are to be interpreted liberally to achieve their purpose of providing safe working conditions for every worker in Washington." *Tradesmen*, 198 Wn.2d at 534-35. WISHA is intended "to assure, insofar as may reasonably be possible, safe and healthful working conditions for every [person]

working in the state of Washington." RCW 49.17.010. WISHA mandates that employers provide employees with "a place of employment free from recognized hazards that are causing or likely to cause serious injury or death." RCW 49.17.060(1). Relevant here, it also defines an "[e]mployer" as

> any person, firm, corporation, partnership, business trust, legal representative, or other business entity which engages in any business, industry, profession, or activity in this state and employs one or more employees or who contracts with one or more persons, the essence of which is the personal labor of such person or persons.

RCW 49.17.020(4).

Our Supreme Court recently resolved the question of WISHA liability for companies that lease temporary workers to jobsites in its 2021 decision in *Tradesmen*. There, it plainly stated that "[i]n the joint employment context, *both* the staffing agency and the host employer may be cited if they possess substantial control over the workers and the work environment involved in the violations." *Tradesmen*, 198 Wn.2d at 541 (emphasis added). The court set out the analysis for such an inquiry as follows:

> To determine liability under WISHA, where the putative employer is a staffing agency, the inquiry includes whether the agency had sufficient control over the workers and work environment to abate the relevant safety hazards. In doing so, we consider the relevant safety hazard involved in the violation and determine the putative employer's level of control over the manner and instrumentalities of the work being performed, control over the workers, control over work conditions on site, and the ability to abate the relevant hazards. This determination is made on a case-by-case basis.

*Id.* at 541-42. It also clarified that because "the economic realities test articulates nonexclusive factors, knowledge of a hazard may be a relevant consideration where it is paired with some level of control and ability to abate the relevant

hazard." *Id.* at 542. If "an employer knows or *should have known of a hazard* and has some relevant control over the workers and related work conditions, liability may be appropriate." *Id.* at 543 (emphasis added). Accordingly, the relevant inquiry is

> whether the staffing agencies retained substantial control over the workers and work environment such that they could abate the relevant safety hazards. We consider factors such as the power to control the worker, the ability to modify work conditions and status, control over the work site, and the level of knowledge of the relevant safety hazard.

*Id.* at 543-44.

*Tradesmen* was a consolidated case that provided the court the opportunity to apply its test to two different employers, Tradesmen and Laborworks, to illustrate the appropriate case-by-case analysis. There, Tradesmen "was cited for a temporary worker's exposure to fall and scaffold hazards" at a host jobsite. *Id.* at 544. Tradesmen's contract with the host employer and jobsite safety inspection procedures at the time of that incident were similar to its contract with Pacific West and the procedures undertaken at the Doan residence jobsite. *See id.* Crucially, the host employer in the case before the Supreme Court had moved the employee from the first worksite to a second location that Tradesmen had not inspected, without notifying Tradesmen. *Id.* at 544-45. "As a result, Tradesmen had no ability to identify or abate the fall and scaffolding hazards at the unapproved site. The infrastructure-related violations were simply beyond the purview of Tradesmen's control." *Id.* at 545. The court concluded that, on those facts, Tradesmen was "not a liable employer for th[o]se WISHA violations." *Id.*

- 10 -

In contrast to the court's conclusion regarding Tradesmen, Laborworks was cited "for WISHA violations involving the provision of vaccinations, implementing proper safety equipment for sharp object exposure, *inadequate safety training*, and inadequate medical record keeping." *Id.* (emphasis added). As to those violations, the court noted that "Laborworks exercised substantial control over the workers and conditions—particularly, before the workers were assigned" to the jobsite. *Id.* at 548. The citations issued to Laborworks "involved responsibilities that are generally *taken before or upon commencement* of the job assignment and record keeping requirements." *Id.* (emphasis added). In the earlier proceedings in that case, the BIIA found that Laborworks was responsible for "providing initial training," so the court held that it was therefore liable for the WISHA violations. *Id.* The two employers in *Tradesmen* are representative of a spectrum, not discreet categories, and emphasize the Supreme Court's directive to consider who qualifies as an employer, and what corresponding liability attaches, on a "case-by-case basis" in the context of joint employment. *See id.* at 542.

II.     Whether Tradesmen is Employer for Purposes of April 2018 WISHA Citation

The parties disagree on the application of the Supreme Court's *Tradesmen* opinion to the present case. In the superior court, L&I expressly moved to reinstitute the citation based on the *Tradesmen* holding that it contended supported its position that Tradesmen was a citable employer with regard to the violations alleged in this case. However, Tradesmen avers in its response brief that our Supreme Court merely reaffirmed existing precedent to hold "control over the work environment" remains "the key element to determine whether an employer was

covered under" WISHA and reiterated this position at oral argument before this court.[8]  However, also at oral argument in this case, L&I disputed this interpretation and asserted it "would undercut the Laborworks decision" made by the Supreme Court and further contended "this case, it all turns on the cited standard, on is this a preparatory cited standard or is this a site specific one."[9]  L&I's position is that the cited standard here involved preparation.[10]  Toward that end, it argued that the court's reasoning in *Tradesmen* established that the control and ability to abate a workplace hazard could support liability.  Specifically, L&I explained,

> the court really looks to, again, based on the facts before it, who is in the best place to abate it, and so again, this would just follow with Tradesmen's already established training regime of what its offering, it is not site specific.[11]

L&I's characterization of the *Tradesmen* holding is correct.

A.      Application of Controlling Legal Framework to Violations in Citation

Both parties understandably focus most of their arguments and authority on the serious violation, based on WAC 296-62-07722(1)(c), as it carries the only financial penalty imposed in this case and the most significant long-term consequences for Tradesmen.  In its briefing, L&I takes a broad view of the WACs and explains the interplay between the relevant sections.  It elaborated on this point at oral argument before this court when it asserted WAC 296-62-07722(1)(c), the code provision it claims Tradesmen violated, is a "generalized statute because

---

[8] Wash. Ct. of Appeals oral arg., *Dep't of Lab. & Indus. v. Tradesmen Int'l, LLC*, No. 87759-3-I (Mar. 3, 2026), at 13 min., 57 sec., *video recording by* TVW, Washington's Public Affairs Network, https://tvw.org/video/division-1-court-of-appeals-2026031219/.
[9] *Id.* at 6 min., 41 sec.
[10] *Id.* at 6 min., 55 sec.
[11] *Id.* at 5 min, 2 sec.

it specifically states that that training requirement is for all individuals who are not doing asbestos removal work."[12]  In its response brief, Tradesmen seeks to narrow the focus and asserts that the "[r]equired contents of the two-hour asbestos awareness training is set forth in WAC 296-62-07722(6)" and "[t]his WAC only applies to employees who engage in housekeeping operations."  While this is an accurate characterization of that subsection, it has no bearing on the citations issued here.  Again, we "give great deference to an agency's interpretation of its own properly promulgated regulations, 'absent a compelling indication' that the agency's regulatory interpretation conflicts with legislative intent or is in excess of the agency's authority."  *Silverstreak*, 159 Wn.2d at 884 (quoting *Marquis*, 130 Wn.2d at 111).  The controlling WACs must be analyzed in this light.

WAC 296-62-07701 sets the scope and application of the WACs regarding asbestos exposure in the workplace:

> (1) WAC 296-62-07701 through 296-62-07753 *applies to all occupational exposures to asbestos in all industries covered by chapter 49.17 RCW*, Washington Industrial Safety and Health Act and chapter 49.26 RCW, Health and safety—Asbestos.
> (2) This part applies to construction work as defined in WAC 296-155-012.

(Emphasis added.)  WAC 296-155-012 defines "[c]onstruction work" as, "All or any part of excavation, construction, erection, alteration, repair, *demolition, and dismantling, of buildings* and other structures and all operations in connection therewith."   (Emphasis added.)   WAC 296-62-07722(1)(c) applies to "all employees" who will not require other more specific asbestos certifications and mandates that they "be trained according to the provision of this section regardless

---

[12] *Id.* at 2 min., 50 sec.

of their exposure levels." WAC 296-62-07722(5) then describes the required content of the training program at length. Tradesmen's broad contention that asbestos training is required for a limited subset of workers and argument before this court that the employees on the Doan residence jobsite were not engaged in such work[13] is belied by the plain language of WISHA.

It is undisputed that the exposed workers here were engaged in demolition and dismantling at the Doan residence, such that they were engaged in construction work as defined by WAC 296-155-012. This work is explicitly within the scope of WAC 296-62-07701(2), and therefore, both WAC 296-62-07722(1)(c), the general training requirement for non-certified workers, and -07722(5), which describes the training program these workers are required to undergo, apply to the case before us. In *Tradesmen*, our Supreme Court expressly held that training requirements are preparatory responsibilities the staffing agency carries as an aspect of its overarching duty to protect its workers. In upholding the citation against Laborworks, it explained the staffing agency employer,

> exercised substantial control over the workers and conditions—particularly, before the workers were assigned to the . . . work site. The citations in this case involved responsibilities that are generally taken before or upon the commencement of the job assignment and record keeping requirements. The Board found that Laborworks was responsible for administrative tasks and *providing initial training*. These facts support the conclusion that Laborworks was a liable employer for the WISHA violations in this case.

*Tradesmen*, 198 Wn.2d at 548 (emphasis added). As set out, *infra,* Tradesmen had the necessary control to provide the required training prior to assignment. As L&I persuasively argued, these specific training requirements applied to the

---

[13] *Id.* at 10 min., 18 sec. to 11 min., 12 sec.

employees on the Doan residence jobsite as construction workers. As such, Tradesmen exercised the same degree of control over the Doan residence employees as that identified in the Supreme Court's analysis of the Laborworks citation; it had "substantial control over the workers and conditions—particularly, before the workers were assigned to the . . . work site." *Id.* Tradesmen's failure to train the Doan residence construction workers as required by the relevant WACs rendered it a citable employer for this specific WISHA violation.

Tradesmen secondarily contends that it was not a citable employer as to these violations because it lacked knowledge regarding the presence of asbestos at the Doan residence. As a preliminary matter on this point, the definitions section of WISHA, WAC 296-62-07703, defines asbestos as including "PACM." For purposes of WISHA, "PACM" stands for "[p]resumed asbestos-containing material," the definition of which expressly includes "[t]hermal system insulation and surfacing material found in building, vessels, and vessel sections constructed no later than 1980." WAC 296-62-07703. Because the Doan residence was known to have been constructed in 1939, it was subject to the presumption regarding asbestos-containing materials.[14] More critically, however, the Supreme Court made clear in *Tradesmen* that actual knowledge is not required when it stated "where an employer knows *or should have known of a hazard* and has some

---

[14] The good faith survey conducted by Pacific West indicated the presence of vermiculite in the attic of the Doan residence. Tradesmen project coordinator Fobes testified on direct examination that his training on the health hazards of asbestos for two of the impacted Doan residence workers included a video that explains, among other things, that "[a]sbestos is in that vermiculite."

relevant control over the workers and related work conditions, liability may be appropriate." 198 Wn.2d at 543 (emphasis added).

Crucially, Tradesmen's violations at issue here were not the result of any specific conditions at the Doan residence, instead both relate to the steps Tradesmen failed to take prior to the assignment of workers and the commencement of work at the jobsite; specifically, training and accident prevention planning. Much like Laborworks, Tradesmen had full knowledge of its training procedures. It possessed and retained the training records of employees, as evinced by the testimony of Tradesmen project coordinator Fobes, who had provided training to two of the impacted workers prior to their assignment at the Doan residence. Tradesmen also produced the workers' Occupational Safety and Health Administration training cards and the related training material used by Fobes. That training, which Fobes stated was not mandatory, was made available *before* the workers were assigned to the Doan residence, a point at which Tradesmen had exclusive control over the workers, knowledge of its own training protocols, and the ability to require training before assignment. This evidence collectively undermines the BIIA conclusion of law that Tradesmen was "not an employer . . . within the meaning of the Washington Industrial Safety and Health Act" because it establishes that Tradesmen had substantial control over workers prior to their assignment for training purposes.

The reasoning set out regarding the serious violation of WAC 296-62-07722(1)(c) applies equally to the second violation that arises from WAC 296-155-110(3). That general violation was issued for Tradesmen's noncompliance with

the "minimal program elements for all employers" concerning its "safety orientation program." *See* WAC 296-155-110(3). L&I alleged that the form Tradesmen used to address jobsite hazards, titled "Safety Topics Discussed," also involved circumstances fully within Tradesmen's knowledge. Bond and Holloway both explained that they shared the same routine practice: to review the form with employees *before* work began on the jobsite. They testified that field supervisors would walk around the jobsite with the workers and discuss the appropriate safety precautions with them. The form provided a checklist of safety topics for the field supervisor to address, but asbestos was not included in that list. Bond and Holloway both asserted that they had followed this procedure with the impacted workers after their assignment to the Doan residence and completed the form before any work had begun on the jobsite. Any purported lack of knowledge by Tradesmen of the hazards present at the Doan residence is not relevant to the issuance of the general violation of WAC 296-155-110(3) because it was based on the deficiency of a form Tradesmen used to discuss safety with its workers before any work began; it was a preparatory safety measure. Again, because the WACs the staffing agency, Tradesmen, was cited for violating solely concern its responsibilities to the workers *prior to* assignment and commencement of work, specific knowledge of the precise hazards is not a prerequisite for liability under WISHA.

B.    2019 BIIA Findings and Conclusions

At oral argument before this court, the parties were asked about the purpose of the discussion section of the July 2019 order by the industrial appeals judge that

was ultimately adopted by the BIIA; specifically, whether its components constituted findings of fact to which an appellate court can apply the substantial evidence test.[15]  L&I answered that the purpose of this section is simply to explain the BIIA's reasoning of its decision to the parties and is not considered by the reviewing court on appeal.[16]  Tradesmen, however, stated that the discussion portion of the order could be considered findings of fact, that were now conclusive, based on the application of RCW 49.17.150(1) and that "the discussion provides the substantive evidence to support the findings of fact."[17]  To be clear, the discussion portion of the order is neither a finding nor a conclusion and, therefore, not substantively relevant to our de novo review of the BIIA decision before us. *See Baley Constr.*, 10 Wn. App. 2d at 782.  Additionally, L&I's challenge to the BIIA order centers on a single legal conclusion: that Tradesmen was not a citable employer on the facts relevant to the April 12, 2018 violations.  In the absence of any challenges to the findings of fact in the order, they are verities.  *See Hopkins*, 11 Wn. App. 2d at 353.

Turning to the substance of the order, the findings of fact entered by the industrial appeals judge and adopted by the BIIA were focused on who had control at the Doan residence worksite.  Of the nine total findings set out in the July 2019 order, findings 2 through 9 address the client services agreement between Tradesmen and Pacific West, Pacific West's authority to control and direct the

---

[15] Wash. Ct. of Appeals oral arg., *supra*, at 1 min., 56 sec.

[16] *Id.* at 2 min., 29 sec.

L&I also referred to this section of the order as "dicta."  While we agree with L&I that the purpose of the discussion section in a BIIA is to provide its reasoning to the parties, we disagree as to L&I's misuse of the term "dicta," which applies only to appellate court opinions.  *See Gabelein v. Diking Dist. No. 1 of Island County*, 182 Wn. App. 217, 239, 328 P.3d 1008 (2014).

[17] Wash. Ct. of Appeals oral arg., *supra*, at 12 min., 15 sec.

workers at the Doan residence jobsite, and Tradesmen's lack of control over the workers once they had begun work there. From these findings, the industrial appeals judge entered three conclusions of law which were, again, adopted by the BIIA as final when it denied L&I's request for further review in September 2019. L&I only truly challenges conclusion of law 2 that determined Tradesmen was not a citable employer under WISHA.

In reaching its legal conclusions, the BIIA stated that it applied the economic realities test from *In re Skills Resource Training Center,* No. 95 W253 (Wash. Bd. of Indus. Ins. Appeals Aug. 5*,* 1997). However, that standard is no longer controlling in light of *Tradesmen*, which addressed this test in the specific context of joint employment. Although control still remains crucial to the analysis, our Supreme Court has now expressly held that the "safety hazard involved in the violation," must be considered in order to "determine the putative employer's level of control over the manners and instrumentalities of the work being performed, control over the workers, control over work conditions on site, and the ability to abate the relevant hazards . . . on a case-by-case basis." *Tradesmen*, 198 Wn.2d at 542. Further, it also plainly held that failure to prepare or train workers is a potential source of WISHA liability for staffing agencies. *Id.* at 548. The BIIA order before us does not comport with the law as set out in controlling Supreme Court precedent.[18]

---

[18] Furthermore, the discussion portion of the BIIA order explicitly invokes its own prior decision in *Laborworks*, the very case that was reversed by the Supreme Court as part of its *Tradesmen* opinion. *See In re Laborworks Indus. Staffing Specialists, Inc.,* No. 17 W1067 (Wash. Bd. of Indus. Ins. Appeals May 29, 2018), *aff'd, Dep't of Lab. & Indus. v. Laborworks Indus. Staffing Specialists, Inc.*, No. 79717-4-I, (Wash. Ct. of App. Aug. 17, 2020) (unpublished), https://www.courts.wa.gov/opinions/pdf/797174.pdf, *rev'd, Tradesmen*, 198 Wn.2d 524.

No. 87759-3-I/20

Accordingly, we reverse, vacate the July 2019 BIIA order, and reinstate the citation against Tradesmen for the two violations addressed herein.

WE CONCUR:

---

Again, while the discussion portion of the order is not substantively relevant to our review, the fact of the BIIA's reliance on the portion of the consolidated Supreme Court case that resulted in reversal further establishes the error in its legal reasoning.

- 20 -